## HOLMES v. SAENGER AMUSEMENT CO., INC., ET AL.

---

(February 2, 1931. Opinion and Decree.)
(February 16, 1931. Rehearing Refused.)
(March 30, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

---

Lazarus, Weil & Lazarus, of New Orleans, attorneys for plaintiff, appellee.

Rosen, Kammer, Wolff & Farrar, of New Orleans, attorneys for defendants, appellants.

WESTERFIELD, J. On February 16, 1925, the Canal Realty & Improvement Company, Inc., issued a number of bonds aggregating $500,000 in principal and secured by mortgage of certain property in the city of New Orleans.

The entire issue was bought by the Saenger Amusement Company, Inc., and Loew's, Inc. In order to enhance the value of the bonds and facilitate their sale, the purchasers caused the following indorsement to be made upon them:

"As the owners in indivision of the within bond, and in order to facilitate the sale hereof, and as an inducement to third persons or corporations to purchase same, the undersigned Saenger Amusement Co., Inc., of New Orleans, Louisiana, a corporation organized under the laws of the State of Louisiana, under authority of a resolution of its Board of Directors, adopted at a meeting duly held and convened, and Loew's, Incorporated, of New York, a corporation organized under the laws of the State of Delaware, under authority of a resolution of its Board of Directors, adopted at a meeting duly held and convened, have jointly and severally unconditionally guaranteed, and do jointly and severally unconditionally guarantee to the owner of the within bond, his heirs and assigns, the punctual payment of the principal and interest thereon, as the same mature, and the undersigned agree punctually to pay said principal and interest, if default in payment thereof be made by said Canal Realty & Improvement Company, Inc. This guarantee is intended to be and is a valid, present, continuing, absolute and unconditional joint and several obligation of the undersigned as guarantors for the payment of this bond as above provided, and of any of the interest coupons thereof, and it shall not be impaired or affected by any extension of payment of this bond, coupons or interest, or anything done or omitted to be done by Canal Realty & Improvement Company, Inc., or by the Trustee in the deed of trust securing this bond, or by any other person or corporation whatsoever, it being the intention hereof that the undersigned as guarantors, shall unconditionally

be bound jointly and severally, in any and all events with the maker hereof, for the ultimate payment and discharge of the principal and interest of this bond, and shall be and become immediately liable in solido to pay and discharge same in the event default in the payment hereof be made by said maker.

> "Saenger Amusement Co., Inc.
> "By J. H. Saenger
> "Loew's, Incorporated,
> "By Leopold Friedman."

The act of mortgage securing the bonds contained a stipulation which provided for the payment of interest coupons and the gradual retirement of principal through the Mortgage & Securities Company, which corporation had underwritten the bonds. This provision recited that on the 1st day of each month the company would deposit with the Securities Company one-twelfth of the amount necessary to pay the principal, interest, and 2 per cent federal tax becoming due on the bonds within the ensuing twelve months, "and to the extent of the monies so paid or deposited with said Mortgage & Securities Company, the trustee and/or the holders of any of the bonds issued hereunder shall look solely to the Mortgage & Securities Company for payment, and the Company shall be under no further liability therefor."

In August, 1929, the Mortgage & Securities Company failed. At that time there were certain funds which had been deposited with the Securities Company by the Canal Realty & Improvement Company, Inc., which, under the terms of the mortgage, were applicable to the payment of principal and interest as of January 1, 1930.

The plaintiff in this case was the owner of three of the bonds, aggregating $1,500, upon which there was due him $1,017.54, which, because of its insolvency, the Securities Company failed to pay. He brought this suit against the Saenger Amusement

Company, Inc., and Loew's, Inc., as guarantors of the bonds. On behalf of Loew's, Inc., an exception to the jurisdiction was maintained and acquiesced in. Consequently that defendant is out of the case. After a hearing upon the merits, judgment was rendered as prayed for against the other defendant, and it has appealed.

The case turns upon the interpretation of the guaranty indorsed upon the bonds; the contention of plaintiff being that it is unlimited and unqualified by any provision or condition in the act of mortgage, and the position of defendant being that the guaranty goes no further than to insure the carrying out of the obligations of the Canal Realty & Improvement Company, as the same appears in the act of mortgage, and that, since that company has paid to the Mortgage & Securities Company the amount now sued for, it is, under the terms of the mortgage, relieved from any responsibility in the premises.

Counsel for appellant in their brief say that it was the original intention of the Saenger Amusement Company, Inc., and its associate, Loew's, Inc., for whose benefit the bonds were issued, to guarantee the bonds directly, but, being persuaded by counsel for the Mortgage & Securities Company that this action on their part would be ultra vires, "the device was adopted of having the bonds issued by Canal Realty & Improvement Company, Inc., without a guarantee, then having them purchased by Saenger Theaters, Inc., and Loew's, Incorporated, and then having the latter two companies sell them to Mortgage & Securities Company with the guarantee endorsed thereon. This device was carried out. The bonds were purchased by Saenger Amusement Company, Inc., and Loew's, Inc., from Canal Realty & Improvement Company, Inc., the maker, and then resold to Mortgage &

Securities Company with the guarantee of these two companies."

Upon the foregoing statement the argument is made that the intention of defendant comprehended nothing more than the guaranty of the bonds in accordance with the terms of the act of mortgage, to which, but for the belief that its action in that respect would be ultra vires, this defendant and its associate would have been parties, and the conclusion reached that, in construing the guaranty upon which this suit is predicated, it must be considered in the light of the defendant's original intention. It is sufficient answer to this contention to say that the intention of parties to an instrument must first be determined by a consideration of its terms. If the writing be clear and unambiguous, the intent of the parties is revealed by its four corners. We believe the wording of the guaranty very clear and to admit of but one interpretation. Its purpose is stated to be to give the bonds greater value than they possessed theretofore, in order to attract purchasers; in other words, to add something to the bonds which, without the indorsement of defendant and its associate, they did not possess. This point is conceded by defendant's counsel, but they contend that the intention was to add only such value as would result from the indorsement of the undertaking of the Canal Realty & Improvement Company, Inc., a sufficient reason, it is claimed, for the guaranty in line with the declared purpose of increasing the salability of the bonds. It seems to us, however, that, if this had been the intention, it would have been a very simple matter to have incorporated some language in the guaranty which would permit of that construction. But, on the contrary, the guaranty indorsed upon the bonds contains absolutely no reference to the act of mortgage, or to the obligations of the Canal

Realty & Improvement Company, Inc., thereunder. It is couched in the broadest terms, indicating an intention to go far beyond the undertaking of the Canal Realty & Improvement Company, Inc., in the act of mortgage. For example, the guarantors "unconditionally guarantee to the owner of the within bond, his heirs and assigns, the punctual payment of the principal and interest thereon as the same mature," and "this guarantee is intended to be and is a valid, present, continuing, absolute and unconditional joint and several obligation of the undersigned as guarantors for the payment of this bond as above provided, and of any of the interest coupons thereof, and it shall not be impaired or affected by any extension of payment of this bond, coupons or interest, OR ANYTHING DONE OR OMITTED TO BE DONE BY CANAL REALTY & IMPROVEMENT COMPANY, INC., OR BY THE TRUSTEE IN THE DEED OF TRUST SECURING THIS BOND, OR BY ANY OTHER PERSON OR CORPORATION WHATSOEVER" (capitals ours), and, lest there be any mistake as to the extent of their obligation in this regard, the guarantors continue to reassure all purchasers that it is "the intention hereof that the undersigned as guarantors, shall unconditionally be bound jointly and severally, in any and all events, with the maker hereof, for the ultimate payment and discharge of the principal and interest of this bond, and shall be and become immediately liable in solido to pay and discharge same in the event default in the payment hereof be made by said maker."

Such language clearly contemplates the payment of the principal and interest of the bonds under any and all circumstances and without any regard to the method of payment provided in the act of mortgage; the sole condition of the guaranty being the failure of the bondholder to get his money.

It is very difficult to believe that the defendant and its associate should have given currency to an obligation expressed in the terms of this guaranty, if their intention was to limit or qualify their liability by the terms of the mortgage, without reference to the instrument itself and without any qualifying phraseology in the guaranty. The conclusion is irresistible that the guarantors of these bonds intended to give these securities their unconditional indorsement in order to allay any doubt which intending purchasers might entertain as to the financial stability and value of the bonds by placing behind them the full measure of their faith and credit, without regard to any qualifications, terms, or conditions contained in the original act of mortgage.

For the reasons assigned, the judgment appealed from is affirmed.

JANVIER, J. (dissenting). I agree with the statement made in the majority opinion that this case turns upon an interpretation of the guaranty indorsed upon the bonds; though, if it were necessary to refer to the act of mortgage securing the bonds, I am well convinced that that document is sufficiently identified with the bonds to permit of its being taken into consideration; but I cannot concur in the view that the guaranty can be interpreted as placing upon the guarantor an obligation greater than that undertaken by the principal.

It is true that the guaranty is involved in legal phraseology and is unnecessarily long, but a reading of it shows that it is divided into two complete sentences, the first of which terminates with the statement that the liability of the guarantor comes ino existence "if default in payment thereof be made by said Canal Realty & Improvement Company, Inc.," and the sec-

ond of which terminates with a similar clause to the effect that the guarantor shall be liable "in the event default in the payment hereof be made by said maker."

Thus each of the sentences contains a conditional clause to the effect that the guarantor's liability comes into existence only in the event the principal defaults in making payment.

It is conceded by all parties that the principal has not defaulted and has made every payment in strict accordance with the stipulations of the obligation undertaken by it.

Since the guarantor is liable only in the event the principal defaults, and since it is conceded that the principal has not defaulted, then the guarantor is not liable.

It is true that in the guaranty reference is made to the trustee and to any "other person or corporation whatsoever," but one who reads the document carefully will immediately see that the guarantor of the principal is not made liable for the acts or omissions of the trustee, or of other third persons, but merely that the provision is that, if the guarantor's liability comes into existence by reason of the default of the principal, then nothing the trustee or any other third person can do will impair or otherwise affect such liability. Evidently the purpose of the guaranty was to place the guarantors, who were well known as being financially sound, in the shoes of the principal, an unknown subsidiary, and, in my judgment, it was not intended nor stipulated that the guarantors should also stand behind the trustee, the depositor, and all other persons or corporations whose names may appear in any of the various documents.

I think the liability of the guarantors is limited to that of the principal, and I therefore respectfully dissent.